```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEON ROACH,
                                              DECISION AND ORDER
                Petitioner,                   No. 05-CV-6500
     v.

JAMES T. CONWAY, Acting Superintendent,
Attica Correctional Facility

                Respondent.
_____
```

## I. INTRODUCTION

Petitioner, Leon Roach ("Roach"), filed a timely petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction. Roach was convicted, following a jury trial, of two counts of criminal sale of a controlled substance in the second degree (N.Y. Penal Law ("Penal Law") § 220.41 [1]). Judgment was entered on January 11, 2002, in New York Supreme Court, Monroe County (Geraci, J.). Roach was sentenced as a second felony offender to two consecutive indeterminate terms of imprisonment of eight years to life. Roach's conviction was unanimously affirmed by the Appellate Division, Fourth Department, and leave to appeal to the New York State Court of Appeals was denied. People v. Roach, 2 A.D.3d 1389 (4th Dept. 2003), lv. denied 2 N.Y.3d 745(N.Y. 2004).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By Indictment Number 2201-212 and Indictment Number 2001-417, Roach was charged with three counts of criminal sale of a controlled substance in the second degree (Penal Law § 220.41 (1)),

arising out of the following incidents.  On three separate occasions in 2000, Roach sold cocaine to undercover Greece Police Officer John Henderson.  Officer Henderson testified that he called Roach on November 9th, November 22nd, and December 7th to arrange meetings for the purpose of purchasing cocaine. (T.[1] 191, 214, 229-231).

Roach's jury trial commenced on November 26, 2001, in Monroe County Court (Geraci, J.).  At trial, Officer Henderson testified that after first meeting Roach on November 3, 2000, he called him on November 9, 2000, to set up a meeting to purchase cocaine. (T. 189, 191). During the taped telephone conversation, Roach and Officer Henderson agreed to meet at Cathay Pagoda, a Chinese restaurant in the City of Rochester, where Officer Henderson would purchase 31 grams of cocaine from Roach.  (T. 199).  An hour later, Roach met Officer Henderson at Cathay Pagoda and in a videotaped transaction he sold 31 grams of cocaine to Officer Henderson for $1,200. (T. 200-207).

On November 22, 2000, Officer Henderson called Roach again to arrange another meeting to purchase more cocaine. (T. 214-15).  A half an hour later, the two met at Cathay Pagoda and Roach sold 28 grams of cocaine to Officer Henderson. (T. 218-19).  Both the phone call in which the meeting was arranged and the actual meeting where

---

[1] Citations to "T." refers to the state court trial transcript.

the sale took place were recorded and presented at trial. (T. 219-20).

Officer Henderson's last meeting with Roach took place on December 7, 2000, after Officer Henderson called Roach and asked if he could purchase an ounce of cocaine. (T. 231). While the telephone conversation was recorded and presented at trial, the surveillance team was unable to videotape the third meeting. (T. 231-236).

At trial, the prosecution provided authenticated audio cassette recordings and transcripts of the three telephone conversation between Roach and Officer Henderson, as well as videotapes of the first two cocaine sales. In addition, the prosecution utilized testimony from Greece Police Officer Kevin Degnan, who had provided surveillance for the drug sales and field tested the cocaine that Henderson had purchased from Roach on November 9, 2000. (T. 308). Officer Degnan also explained how and where the cocaine purchases were safely and securely stored. (T. 308-12). The prosecution also had Linda Teague, a forensic chemist for the Monroe Country Public Safety Laboratory, testify that all three samples from Henderson's purchases tested positively for cocaine and the process for how the samples were handled. (T. 331-46).

At the close of the prosecution's proof, the defense did not present any witnesses. The defense did, however, make a motion for

a dismissal of the charges, which was denied by the trial court. (T. 350). The jury returned a verdict convicting Roach of two counts of criminal sale of a controlled substance in the second degree. (T. 455-56). Prior to Roach's sentencing, Roach made a motion pursuant to New York Crim. Proc. Law ("C.P.L.") § 330.30(3) on the grounds of newly discovered evidence. Roach claimed that newly received telephone records would impeached Officer Henderson's testimony regarding their telephone conversation that allegedly occurred on November 22, 2000, prior to the consummation of a drug sale that day. (S.[2] 12-16). At sentencing, Judge Geraci denied this motion on the basis of overwhelming evidence against Roach for his involvement in the two cocaine sales of which he was convicted. (S. 16). Judge Geraci then sentenced Roach as a second felony offender and received a sentence of two consecutive terms of eight years to life. (S. 36).

Roach appealed his conviction to the New York State Appellate Division, Fourth Department, alleging that the trial court erroneously denied his motion to set aside the verdict based on newly discovered evidence, the trial court made an erroneous Sandoval ruling, and his sentence was harsh and excessive. See Appendix, State Court Records, Exhibit C, 1. Roach also submitted a pro se supplemental brief in which he raises four additional

---

[2] Citations to "S." refers to the sentencing minutes.

claims including: (1) the trial court erred in denying his motion to dismiss the alleged defective indictment; (2) the trial court erroneously denied his motion to hold an audibility hearing; (3) the trial court erred in allowing the prosecution to submit the alleged narcotics into evidence without establishing a proper chain of custody; and (4) the trial court erroneously denied his request for the jury to be charged on the law pertaining to the chain of custody. See Appendix, State Court Records, Exhibit F.  The Fourth Department unanimously affirmed Roach's conviction reasoning that the trial court properly denied Roach's §330.30 motion because the newly discovered evidence was "'not of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant.'" People v. Roach, 2 A.D.3d 1389 (4th Dept. 2003).  In addition, the Fourth Department held that the trial court's denial to dismiss the indictment because it lacked sufficient evidence was not reviewable because Roach's conviction was based upon legally sufficient evidence at trial. Id.  All remaining contentions were dismissed as being without merit. Id. at 1390.  Roach then sought leave to appeal to the New York Court of Appeals which was denied. People v. Roach, 2 N.Y.3d 745 (2004).

Roach then made a motion pursuant to C.P.L. § 440.10(1) to vacate the judgment, alleging that he had ineffective assistance of trial counsel. See Appendix, State Court Records, Exhibit N.  On

July 24, 2004, the trial court denied this motion on the grounds that Roach failed to demonstrate that he was denied a fair trial by less than meaningful representation based on the trial counsel's failure to introduce evidence which Roach later claimed ought to have been used to impeach Officer Henderson. See Appendix, State Court Records, Exhibit Q. Leave to appeal this Order was denied by the Appellate Division, Fourth Department on February 4, 2005. Lastly, Roach filed a motion for a writ of error coram nobis based on ineffective assistance of appellate counsel. This motion and further leave to appeal was denied. Roach v. People, 15 A.D.3d 1016 (4th Dept. 2005) lv. denied People v. Roach, 4 N.Y.3d 835 (N.Y. 2005).

On September 25, 2005, Roach filed this instant petition in which he raises six grounds for relief: (1) trial court erred in denying motion to dismiss the defective indictment; (2) trial court improperly denied an audibility hearing; (3) trial court erred in allowing the prosecution to submit narcotic evidence without establishing chain of custody; (4) trial court erred in denying the defense's request to charge the jury on the law pertaining to chain of custody; (5) ineffective assistance of counsel; and (6) ineffective assistance of appellate counsel. Petition ("Pet.") ¶ 22 (Dkt. #1).

## III. **GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW**

**A.  "In Custody" Requirement**

On October 28, 2009, Roach was granted merit release to parole.³ His release, however, does not moot this petition for federal habeas relief. Under 28 U.S.C. § 2254, a habeas petitioner must establish that he is "in custody in violation of the Constitution or laws ... of the United States." See 28 U.S.C. § 2254(a). However, a federal habeas court will review a petitioner's petition for habeas relief provided that the petitioner was in custody at the time the petition was filed. Wheel v. Robinson, 34 F.3d 60, 63 (2d Cir. 1994)(quoting Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam) (in turn citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)); accord Spencer v. Kemna, 523 U.S. 1, 7 (1998) (holding that the "in custody" provision only requires that the petitioner be in custody at the time the petition is filed). Since Roach filed the instant petition for federal habeas relief while he was incarcerated, he satisfies the "in custody" requirement under § 2254.

Moreover, the Supreme Court has held that a habeas petition, which is challenging a criminal conviction, is "not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner

---

³ This information was obtained from the New York State Department of Correctional Services ("DOCS") website. See DOCS Inmate Lookup at http://nysdocslookup.docs.state.ny.us (Department Identification Number 02-B-0158 ).

post-release, and therefore a case or controversy may continue to exist." Perez v. Greiner, 296 F.3d 123, 125 (2d Cir. 2002) (citing Pollard v. United States, 352 U.S. 354, 358 (1957); Sibron v. New York, 392 U.S. 40, 54-56 (1968) (citing deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences as examples of collateral consequences and asserting a presumption that these consequences attach to criminal convictions post-release)). However, once a petitioner is no longer incarcerated, he must show "some concrete and continuing injury other than the now-ended incarceration or parole-some 'collateral consequence' of the conviction . . . if the suit is to be maintained." Spencer, 523 U.S. at 7 (quoting Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968)).

For petitioners such as Roach, who are challenging the validity of their criminal convictions in federal courts, the Supreme Court has "been willing to *presume* that a wrongful criminal conviction has continuing collateral consequences" so that their habeas petitions do not become moot after their release. Id. at 8 (emphasis added). Since the presumption of collateral consequences is applicable here, the Court finds that, notwithstanding his release from incarceration, Roach's habeas petition presents a justiciable "case or controversy" for purposes of conferring subject matter jurisdiction under Article III, Section 2 of the United States Constitution. See U.S. Const. art. III, § 2.

**B.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified

the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## IV. PETITIONER'S CLAIMS

### A. Trial Court's Denial to Dismiss the Indictment

Roach argues that his indictment was based on a false crime report being presented to the grand jury. This claim was presented in Roach's pro se supplemental brief filed on direct appeal but the Appellate Division, Fourth Department, found that a sufficiency of the evidence presented to the grand jury is "not reviewable" on appeal when the conviction is based on legally sufficient evidence at trial. Roach, 2 A.D.3d at 1389.

Despite Roach's claim being exhausted at the state court level, it is not cognizable in petition for federal habeas corpus relief. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court."); Beverly v. Walker, 899 F.Supp. 900, 908 (N.D.N.Y.1995) ("[A] petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error by establishing both that there was probable cause to indict the defendant and that the defendant was actually guilty beyond a reasonable doubt.") (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)), aff'd, 118 F.3d 900 (2d Cir.1997). Roach's conviction by the jury cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to

indict and also proof of guilt beyond a reasonable doubt." Dickens v. Fillon, 2002 WL31477701, at *11 (S.D.N.Y. 2002). Accordingly, this claim is not cognizable on review and is dismissed.

**B. Trial Court's Denial of an Audibility Hearing**

Roach argues that the trial court erred in its denial of his counsel's request for an audibility hearing for the audio and video tapes, which were eventually presented at trial.

Prior to trial, Roach's counsel, Mr. Davis, requested that an audibility hearing being held with regard to the audio and video tapes. (MM.[4] 5). However, Judge Geraci found that there was no need for the hearing unless Mr. Davis actually disputed the content or the audibility of the tapes. Id. Mr. Davis agreed with the decision and no further requests were made regarding an audibility hearing. In addition, Mr. Davis allowed the tapes to be played at the trial without any objection.

"[H]abeas corpus relief does not lie for errors of state law, and that necessarily includes erroneous evidentiary rulings." Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir.2006) (internal citation and quotation marks omitted). Rather, "erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived [him] of a fundamentally fair trial." Zarvela v. Artuz, 364 F.3d 415, 418 (2d

---

[4] Citations to "MM." refers to the motion minutes.

Cir.2004) (internal quotation omitted). In the present case, Roach has made no such showing. In fact, upon reviewing the record, there is no evidence that the audiotapes or the videotapes were difficult to understand. In addition, transcripts were provided to jury to assure clarify, and this was done without any objection from the defense. Therefore, it cannot be found that the trial court's denial of an audibility hearing resulted in depriving Roach of a fundamentally fair trial. Accordingly, this claim must be denied.

**C. Trial Court's Admittance of Narcotic Evidence Without a Properly Established Chain of Custody**

Roach contends that the trial court erred in allowing the prosecution to submit narcotic evidence without establishing the proper chain of custody. According to Roach, the prosecution failed to establish a chain of custody that would link him to the substances which ultimately tested positive for cocaine at the Monroe Country Public Safety Laboratory. See Petitioner's Traverse at 10 (Dkt. #10). On direct appeal, the Appellate Division, Fourth Department rejected this claim as meritless. Roach, 2 A.D.3d at 1390.

Roach's claim that the chain of custody was insufficient to permit the admission of the narcotics evidence at trial generally presents a question of state evidentiary law, which is not amendable to federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(stating that "it is not the province of a

-13-

federal habeas court to reexamine state-court determinations on state-law questions"). Federal habeas relief may only be issued on the basis of a state evidentiary error when the petitioner demonstrates that the alleged error violated a federal constitutional right and the error was "was so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998), cert. denied 525 U.S. 840 (1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). However, both federal and state law have established that a defect in the chain of custody goes to the weight of the evidence, not its admissibility. Valerio v. Phillips, 2008 WL 305007, at *18 (W.D.N.Y. 2008). Thus, Roach's claim that the trial court erred in its admission of the cocaine into evidence is a state evidentiary issue that is not cognizable for federal habeas review. Furthermore, upon review of the record, the testimony regarding the chain of custody for the cocaine provides reasonable assurances as to its identity and unchanged condition. Accordingly, this claim provides no basis for federal habeas relief.

**D. Trial Court's Refusal to Charge the Jury on the Law Pertaining to the Chain of Custody**

Roach argues that the trial court erroneously denied his request to charge the jury on the law pertaining to the chain of custody. Specifically, Roach's counsel requested that the jury "be instructed that they could draw an adverse inference from the

People's failure to call everyone that handled the substance." (T. 357). The trial court denied this request on the basis that there was no authority that supported the defense's request as an appropriate charge. (T. 358-59). On direct appeal, the Appellate Division, Fourth Department, held that Roach's claim that the trial court erred by denying its charging request was meritless. Roach, 2 A.D.3d at 1390.

The propriety of a state trial court's jury instructions is generally a matter of state law that is not cognizable on federal habeas review. Cupp v. Naughten, 414 U.S. 141, 146 ((1973). Thus, a challenge which merely claims that instruction was "undesirable, erroneous, or even universally condemned" is not sufficient. Cupp, 414 U.S. at 147. Instead, a petitioner for habeas relief must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." Id., accord Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

While Roach argues that the specific chain of custody charge requested by his counsel would have resulted in a more favorable decision by the jury, a defendant does not "have the right 'to dictate the precise language of a jury instruction.'" United States v. Yousef, 327 F.3d 56, 159 (2d Cir.2003), cert. denied, 540 U.S. 933, (2003) (quoting United States v. Imran, 964 F.2d 1313, 1317 (2d Cir.1992)). In addition, Roach has not presented any evidence that the trial court had the authority or was required to provide

the requested charge to the jury. This Court, after reviewing the record, concludes that the trial court's denial of the requested charge did not resulted in violation of Roach's due process. This claim, therefore there must be denied.

**E. Ineffective Assistance of Trial Counsel**

Roach claims that he was denied his Sixth Amendment right to effective assistance of counsel. Specifically, Roach alleges that his attorney refused to use subpoenaed information to demonstrate that the police officers were not on duty and that no phone calls were made to set up the transaction that took place with Officer Henderson on November 22, 2000. Roach raised this argument in a C.P.L. § 440.10 motion, which was denied by both the trial court and the Fourth Department. See Appendix, State Court Records, Exhibits Q, H.

The Supreme Court standard for ineffective assistance of counsel requires a petitioner to show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). Accordingly, a petitioner must demonstrate that counsel's performance was deficient and that he was prejudiced as a result of counsel's errors in order to obtain relief on an ineffective assistance claim. Id. at 687. To establish constitutionally ineffective assistance of counsel, a petitioner must overcome the

"strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir.1990) (holding that counsel's decisions should not be evaluated in hindsight).

The basis for Roach's contention that he received ineffective assistance of counsel is solely focused on his counsel's failure to use telephone records and time sheets. This claim was similarly raised in Roach's C.P.L. § 330.30 motion but was denied by the trial court on the grounds that the evidence presented at trial, including the video and audio tapes, was overwhelming and there was no probability that had defense counsel presented the time sheets and telephone records at trial that the verdict would have been different. (S. 16). This Court agrees with the trial court's decision and finds that Roach has not demonstrated any prejudice that resulted from counsel's failure to introduce the telephone records and time sheets into evidence at trial. Accordingly, this claim is denied.

### 6. Ineffective Assistance of Appellate Counsel

Lastly, Roach argues that he was denied effective assistance of appellate counsel based on his appellate counsel's refusal to raise four additional claims that Roach requested. These four claims,

however, were raised on direct appeal in Roach's pro se supplemental brief and the Appellate Division, Fourth Department, held that all four claims were meritless. Roach, 2 A.D.3d at 1390. Roach raised ineffective assistance of appellate counsel in his writ of error coram nobis application, which was summarily denied by the Appellate Division, Fourth Department. Roach, 15 A.D.3d at 1016.

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992), cert. denied, 508 U.S. 912 (1993)). For an ineffective assistance of appellate counsel claim to succeed on habeas review, a petitioner must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Mayo, 13 F.3d at 533-34; Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir.2001).

Assuming, arguendo, that Roach could satisfy the first prong required in the Strickland test, he is unable to satisfy the second prong of Strickland-actual prejudice and his claim, therefore, must fail. Roach cannot prove that he suffered any actual prejudice on the basis of his appellate counsel's refusal to raise his requested

-18-

claims on direct appeal because he was able to raise them himself in his pro se supplemental brief, and all claims were considered by the Fourth Department. See Hightower v. Kelly, 657 F.Supp. 516, 517 (S.D.N.Y. 1987). Accordingly, this Court finds that the Fourth Department's denial of Roach's ineffective assistance of appellate counsel claim does not run contrary to the clearly established Supreme Court precedent articulated in Strickland.

## V. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v.United States, 369 U.S. 438 (1962).

Roach must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with

the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

ALL OF THE ABOVE IS SO ORDERED.

<pre>
                                    s/Michael A. Telesca
                                   MICHAEL A. TELESCA
                                United States District Judge
DATED:    Rochester, New York
          December 07, 2009
</pre>